**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
**RONALD A. NIMKOFF,**

                        **Plaintiff,**                             **REPORT AND**
                                                              **RECOMMENDATION**

                **-against-**                                     **17-cv-4458 (PKC)**

**GARTH H. DRABINSKY, et al.,**

                        **Defendants.**
-------------------------------------------------------------x
**ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:**

In this diversity action, *pro se* plaintiff Ronald A. Nimkoff ("Nimkoff" or "plaintiff"), an attorney, alleges that his former clients, defendant Myron I. Gottlieb ("Gottlieb" or "defaulting defendant") and his co-defendant, Garth H. Drabinsky ("Drabinsky" or "non-defaulting defendant") (collectively, "defendants"), failed to make payments due and owing under two promissory notes executed in September 2015 (collectively, the "Promissory Notes").   See generally Complaint (July 28, 2017) ("Compl."), Electronic Case Filing Docket Entry ("DE") #1. Pending before this Court, on a referral from the Honorable Pamela K. Chen, is Nimkoff's motion for default judgment against Gottlieb.   See Notice of Motion for Default Judgment (Oct. 4, 2019), DE #55; see also Plaintiff's Memorandum of Law in Support of his Motion for a Default Judgment Against Defendant Myron I. Gottlieb (Oct. 4, 2019) ("Pl. Mem."), DE #55-9. For the reasons set forth below, this Court respectfully recommends that Nimkoff's motion for default judgment against Gottlieb be granted in substantial part, and that plaintiff be awarded (1) $376,928.65 in unpaid principal; (2) interest on the unpaid principal, calculated at twelve percent per annum compounded monthly from August 26, 2015 until the final entry of judgment; (3)

attorneys' fees totaling $5,253.00; and (4) and costs amounting to $200.00.

## BACKGROUND

**A. Factual Background**

Plaintiff is an attorney licensed to practice law in the state of New York.   See generally Compl.; Affidavit in Support of Motion for a Default Judgment (Oct. 4, 2019) ("Nimkoff Aff.") ¶ 9, DE #55-1.   Defendants are both Canadian citizens who reside in Canada.   See Compl. ¶¶ 2-3.   In 2001, and again in 2005, defendants retained a law firm (the "Nimkoff Firm"[1]) to represent them in multiple actions then pending in the United States District Court for the Southern District of New York.   See id. ¶¶ 7-8.   The Nimkoff Firm sent defendants invoices for legal fees that they incurred in these matters, with defendants paying "some of those invoices for legal fees," but failing to pay others when "their checks were returned for insufficient funds, i.e., 'bounced.'"   Id. ¶ 10 (emphasis omitted).   On October 8, 2009, both defendants acknowledged their unpaid legal fees by executing a promissory note (the "First Promissory Note") through which they promised to pay the Nimkoff Firm $185,969.45, plus "interest at the rate of twelve percent (12%) per annum (one percent (1%) per month), compounded monthly."   Ex. A to Compl. (First Promissory ote) (July 28, 2017) ("First Promissory Note"), DE #1-3; see Compl. ¶ 11.

In September 2015, with their debts still outstanding, each defendant executed another promissory note (the "Second Promissory Note") through which they acknowledged to be jointly

---

[1] The Nimkoff Firm has undergone a series of name changes.   In 2001, the firm was known as Schechter & Nimkoff, LLP, see Compl. ¶ 7, while in 2005, the firm was called Nimkoff Rosenfeld & Schechter, LLP, see id. ¶ 8.   Plaintiff avers that Nimkoff Rosenfeld & Schechter, LLP has been "winding up its affairs" for the last several years, and that he has been practicing law under the name of "The Nimkoff Firm."   See Nimkoff Aff. ¶ 9 n.1.

and severally indebted to Nimkoff, as successor in interest to the Nimkoff Firm, in the sum of $376,928.65, plus interest to retroactively accrue beginning on August 26, 2015, at a rate identical to that set forth in the First Promissory Note.   See Ex. B to Compl. (Second Promissory Note) (July 28, 2017) ("Second Promissory Note"), DE #1-4; Compl. ¶ 12.[2]   According to the Second Promissory Note, payment was to be made "immediately upon [Nimkoff's] demand for such payment from [each defendant] via email[,]" at the email addresses memorialized in the Second Promissory Note.   Id.   On August 1, 2016, Nimkoff sent an email to defendants at their respective email addresses, demanding full payment under the Second Promissory Note.   See Ex. C to Compl. (Email Requesting Payment) (July 28, 2017) ("Email Requesting Payment"), DE # 1-5; see also Compl. ¶ 13.   Plaintiff avers that despite this demand for payment under the Promissory Notes, he never received any payments from either Drabinsky or Gottlieb.   See Compl. ¶ 14.

**B.  Procedural Background**

This case has a lengthy and contentious procedural history, only some of which is set forth in the following summary.   Nimkoff initiated the instant lawsuit in this District on July 28, 2017, see generally Compl., and the case was initially assigned to then-District Judge Joseph F. Bianco and Magistrate Judge A. Kathleen Tomlinson.   On August 17, 2017, Judge Bianco ordered plaintiff to effectuate service upon defendants by October 26, 2017, see 8/17/17 Order (Aug. 17, 2020), DE #4, and, in response, Nimkoff informed the Court that the defendants were "both Canadian citizens, residing in Toronto, and are in the process of being served pursuant to

---

[2] Attached to the Complaint are two substantially identical copies of the Second Promissory Note, separately executed by Gottlieb and Drabinsky.   See Second Promissory Note at ECF pp. 2-3 (Drabinsky's Note); see id. at ECF pp. 4-5 (Gottlieb's Note).   For the purposes of this opinion, the Court refers to the Second Promissory Note executed by Gottlieb unless otherwise specified.

the Hague Convention[,]"   10/26/17 Letter (Oct. 26, 2017), DE #7.   The Ontario Central Authority subsequently effected service on Drabinsky on November 1, 2017, but was unable to effect service on Gottlieb, who was no longer living at the address provided by Nimkoff.   See Letter in Compliance with Order (Jan. 25, 2018), DE #9.   On February 4, 2019, Drabinsky filed his Answer, asserting a number of affirmative defenses as well as a cross-claim against Gottlieb for contribution or indemnification.   See generally Answer (Feb. 4, 2019) ("Drabinsky Ans."), DE #34.   The case was subsequently reassigned to Judge Chen and the undersigned magistrate judge on March 8, 2019, with this Court conducting an initial conference on April 22, 2019, see Minute Entry (Apr. 22, 2019), DE #38.   There, Drabinsky's counsel informed the Court that Drabinsky was in the process of attempting to serve Gottlieb in Canada.   See id. at 1.

Drabinsky subsequently proffered documents showing that the Canadian Central Authority served Gottlieb on May 8, 2019 with copies of (1) Nimkoff's summons and Complaint, and (2) Drabinsky's Answer and Cross-Claim.   See Certificate of Service (with attachments) (June 19, 2019), DE #42.   Nearly two months later, on August 9, 2019, Nimkoff requested an entry of default against Gottlieb, see [Nimkoff] Request for Entry of Default (Aug. 9, 2019), DE #43, and on August 14, 2019, the Clerk noted Gottlieb's default, see [First] Entry of Default (Aug. 14, 2019), DE #44.   Drabinsky then requested an entry of default with respect to his cross-claim against Gottlieb, see [Drabinsky] Request for Entry of Default (Aug. 16, 2019), DE #45, which the Clerk issued later that month, see [Second] Entry of Default (Aug. 26, 2019), DE #47.

After the Clerk issued the Second Entry of Default, Drabinsky filed a letter with this Court – captioned as a request for a pre-motion conference – noting that he intended to defer

4

moving for a default judgment on his cross-claim against Gottlieb until after resolution of Nimkoff's claim against Drabinsky, in order to "avoid inconsistent judgments" and "to preserve judicial economies[.]"  See Motion for Pre Motion Conference (Sept. 9, 2019), DE #48.   That same day, this Court suggested that both Drabinsky and Nimkoff defer moving for default judgment against Gottlieb pending the resolution of Nimkoff's claim against Drabinsky, see Electronic Order (Sept. 9, 2019), and Judge Chen concurred, see Order (Sept. 11, 2019). Nimkoff sought reconsideration in connection with his anticipated motion for default judgment, see Motion for Reconsideration (Sept. 12, 2019) ("Motion for Reconsideration"), DE #49, which Judge Chen granted on September 13, 2019, see Order (Sept. 13, 2019).   On October 4, 2019, Nimkoff moved for default judgment against Gottlieb, see Notice of Motion for Default Judgment, and that motion was referred to the undersigned magistrate judge, see Order Referring Motion (Oct. 7, 2019).[3]

## DISCUSSION

In order to obtain a default judgment, "Rule 55 [of the Federal Rules of Civil Procedure] sets forth a two-step process that first requires the entry of a default through a notation on the record that the party has defaulted, and then entry of a default judgment, which is the final action in the case."  Bravado Int'l Grp. Merch. Servs., Inc. v. Ninna, Inc., 655 F.Supp.2d 177, 186 (E.D.N.Y. 2009) (citing Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95 (2d Cir. 1993)); see also Fed. R. Civ. P. 55.   "Rule 55(a) states that a clerk may enter a default upon being advised by affidavit or otherwise that a party against whom a judgment for affirmative relief is sought has

---

[3] Nimkoff and Drabinsky proceeded with discovery, which concluded, in substantial part, on December 13, 2019.   See Order (Dec. 9, 2019).

failed to plead or otherwise defend."   Enron, 10 F.3d at 95; see Fed. R. Civ. P. 55(a); La Barbera v. Fed. Metal & Glass Corp., 666 F.Supp.2d 341, 346 (E.D.N.Y. 2009).

In this case, the Clerk noted Gottlieb's default on August 14, 2019 in connection with plaintiff's Complaint.   See First Entry of Default.   Gottlieb has not made any appearance in this case, and has neither responded to the Clerk's Entry of Default nor to Nimkoff's motion for default judgment.

## A.  Sufficiency of Service

"A default judgment is ordinarily justified where a defendant fails to respond to the complaint."   SEC v. Anticevic, No. 05 CV 6991(KMW), 2009 WL 4250508, at *2 (S.D.N.Y. Nov. 30, 2009) (citing, *inter alia*, Bermudez v. Reid, 733 F.2d 18, 21 (2d Cir. 1984)). Nevertheless, before entering default judgment, the Court should confirm that the defendant was duly served and notified of the lawsuit.   See LG Capital Funding, LLC v. Wowio, Inc., 16-CV-6632 (AMD), 2018 WL 3202077, at *6 (E.D.N.Y. Apr. 24, 2018) (citation omitted), adopted, 2018 WL 2224991 (E.D.N.Y. May 15, 2018).

In the instant case, Nimkoff posits that Gottlieb is a foreign party, currently residing in Canada.   See Affidavit in Support of Request for a Certificate of Default (Aug. 9, 2019) ¶ 1, DE #43-1 (noting that Gottlieb is a Canadian citizen who resides in Huntsville, Ontario).   As such, service is governed by the rules for service of a summons and complaint on a foreign party, as set forth in Rule 4(f) of the Federal Rules of Civil Procedure.   That rule provides, in pertinent part, that individuals in foreign countries may be served:

> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents . . . .

6

Fed. R. Civ. P. 4(f)(1).   In turn, the Hague Convention on Service Abroad of Judicial and

Extrajudicial Documents sets forth a detailed method of service for participating countries,

whereby each participating state designates a Central Authority to receive requests for service

from other states.   See Hague Convention on Service Abroad of Judicial and Extrajudicial

Documents, Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163 (the "Hague Service Convention").

Canada is a signatory to the Hague Service Convention.   See Signify N. Am. Corp. v. Axis

Lighting Inc., 19cv5516 (DLC), 2019 WL 4994288, at *1 (S.D.N.Y. Oct. 8, 2019) ("Since

Canada and the United States are both signatories to the Hague Convention . . . , service of

process on a defendant in Canada is governed by the Hague Convention.").

According to Nimkoff's affidavit proffered in support of his application for entry of

default, "Gottlieb, who, on information and belief, is a Canadian citizen, residing in Huntsville,

Ontario in Canada, has been duly served, pursuant to the Hague Convention, with the summons

and the [C]omplaint that have been filed with this Court in connection with this action[.]"

Affidavit in Support of Request for a Certificate of Default ¶ 1.   Submitted with Nimkoff's

affidavit was a certificate from the Canadian Central Authority attesting that personal service

occurred on May 8, 2019.   See Ex. B to Affidavit (Certificate from the Canadian Central

Authority) (Aug. 9, 2019) ("Certificate of Service"), DE #43-6 at ECF p. 3 [DE #42 at ECF p.

3].[4]   The delivery to Gottlieb included "[t]he documents referred to in the request" for service,

---

[4] Exhibit B to Nimkoff's Request for Certificate of Default consists of a collection of documents that had previously been docketed into the ECF court file at various stages of the proceeding.   To cite to a specific document within Exhibit B, this opinion uses the pagination imprinted by the ECF system (e.g., "DE #43-6 at ECF p. 3").   However, since many of those documents were docketed into the court file on multiple occasions, and, on the later occasions, reflect overlapping and thus illegible ECF pagination notations, this opinion also includes citations to earlier docket entries, reflecting legible pagination notations (e.g., "DE #43-6 at ECF p. 3 [DE #42 at ECF p. 3]").

see id., including Nimkoff's summons and Complaint (with attachments), and Drabinsky's

Answer and Cross-Claims, see Ex. B to Request for Certificate of Default ("Documents Served")

(Aug. 9, 2019), DE #43-6 at ECF pp. 2-3, 6-32 [DE #42 at ECF pp. 2-3, 6-32].[5]

Based on the foregoing, this Court is satisfied that Gottlieb was properly served with the

summons and Complaint.[6]

## B. Choice of Law

This Court must also determine what law should be applied to Nimkoff's claims.   See

D'Amato v. Five Star Reporting, Inc., 80 F.Supp.3d 395, 407 (E.D.N.Y. 2015) ("As an initial

matter, the Court must determine what law should be applied to the [p]laintiff's common law

breach of contract [claim.]").   The instant case was predicated upon diversity jurisdiction,

pursuant to 28 U.S.C. § 1332(a)(2).   The Second Circuit has held that a federal court sitting in

---

[5]  Article Five of the Hague Service Convention provides that a state's Central Authority may require documents that it serves "be written in, or translated into, the official language or one of the official languages of the [s]tate addressed."   20 U.S.T. 361, art. 5.   Neither Nimkoff's summons and Complaint nor Drabinsky's Answer and Cross-Claims were translated into French, see Documents Served at ECF pp. 6-32 [DE #42 at ECF pp. 6-32], and while some courts in this Circuit have noted that "Canada [] require[s] translation of documents into French for recipients of service under Article 5[,]" Heredia v. Transp. S.A.S., Inc., 101 F.Supp.2d 158, 161 (S.D.N.Y. 2000) (citation omitted), more recent authority looks to the translation requirements of the specific province or territory concerned, see Icon DE Holdings LLC v. Eastside Distribs., No. 14 Civ. 2832(PAE), 2015 WL 4557278, at *2 (S.D.N.Y. July 28, 2015). Here, Gottlieb was served at an address in Ontario, see Certificate of Service, which has a Central Authority that requires that all documents be "written in or translated into English or French."   See Translation Requirements, Hague Conference on Private International Law, https://www.hcch.net/en/states/authorities/details3/?aid=248 (last visited June 9, 2020).

[6]  Both (1) the March 27, 2019 Request for Service Abroad, and (2) the May 30, 2019 Cover Letter written by Nadine Auger of the Central Authority for Service of Documents in Ontario, list Jordan Greenberger, counsel for Drabinsky, as the applicant for service.   See Request for Service Abroad (Aug. 9, 2019), DE #43-6 at ECF p. 2 [DE #42 at ECF p. 2]; Cover Letter (Aug. 9, 2019), DE #43-6 at ECF p. 1 [DE #42 at ECF p. 1].   These documents reflect that it was Drabinsky, not Nimkoff, who caused Gottlieb to be served with the summons and Complaint through the Canadian Central Authority, in connection with the service on Gottlieb of Drabinsky's Answer and Cross-Claims.   See, e.g., Request for Service Abroad at ECF p. 2.   Regardless, because Gottlieb was served with the summons and Complaint, this Court finds no issue with the method by which Gottlieb was served.

diversity applies the choice-of-law rules of the state in which its sits.   See Maryland Cas. Co. v. Cont'l Cas. Co., 332 F.3d 145, 151 (2d Cir. 2003) ("A federal court sitting in diversity applies the choice-of-law rules of the forum state.").   "In a contract dispute, New York courts will generally honor a choice-of-law provision in an agreement" between the parties.   Scharnikow v. Siracuse, 15-CV-6991 (DRH) (SIL), 2016 WL 7480360, at *3 (E.D.N.Y. Dec. 6, 2016) (citing Royal Dispatch Servs., Inc. v. UBS Fin. Servs., Inc., No. 12 CV 2032 (JG)(RLM), 2012 WL 3113291, at *2 n.4 (E.D.N.Y. July 31, 2012) ("New York law generally honors contractual choice-of-law provisions.") (citation omitted)), adopted, 2016 WL 7480364 (E.D.N.Y. Dec. 29, 2016).   Here, the Second Promissory Note states that "[t]his promissory note and any adjudication or action arising from, or relating to[] it[,] is to be governed by the laws of the State of New York without regard to New York's choice of law rules."   Second Promissory Note at 2. In light of the clear and unambiguous language set forth in the Note, this Court concludes that New York state law governs the inquiry herein.[7]

---

[7] As to whether this Court has personal jurisdiction over Gottlieb, in the default judgment context, a court has the discretion to consider *sua sponte* whether it has personal jurisdiction over the defaulting party. See City of N.Y. v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 133 (2d Cir. 2011) ("[B]efore a court grants a motion for default judgment, it may first assure itself that it has personal jurisdiction over the defendant.") (citation omitted).   Here, the Court declines to raise *sua sponte* a personal jurisdiction defense on Gottlieb's behalf, as Gottlieb expressly consented to submit to the jurisdiction of this Court by executing a promissory note with a forum-selection clause.   See Second Promissory Note at 2; D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 103 (2d Cir. 2006).   In any event, a non-appearing defendant does not, by defaulting, forfeit his right to collaterally challenge any ensuing default judgment for a lack of personal jurisdiction.   See Ins. Co. of Ir., Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 706 (1982) ("A defendant is always free to ignore the judicial proceedings, risk a default judgment, and then challenge that judgment on jurisdictional grounds.").

## C. Liability

### 1. General Legal Principles

If a defendant defaults and the plaintiff moves for default judgment, a court "is required to accept all of the [plaintiff's] factual allegations as true and draw all reasonable inferences in its favor." Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009) (citation omitted). Additionally, "a party's default is deemed to constitute a concession of all well pleaded allegations of liability." Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992); see Morales v. B&M Gen. Renovation Inc., 14-cv-7290 (MKB) (MDG), 2016 WL 1266624, at *2 (E.D.N.Y. Mar. 9, 2016), adopted, 2016 WL 1258482 (E.D.N.Y. Mar. 29, 2016).

"Nevertheless, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." LaBarbera v. ASTC Labs. Inc., 752 F.Supp.2d 263, 270 (E.D.N.Y. 2010) (citation and quotation marks omitted); see also 10A Charles A. Wright et al., Federal Practice & Procedure Civil § 2688.1 (4th ed. 2020) ("Once the default is established, defendant has no further standing to contest the factual allegations of plaintiff's claims for relief. Even after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law."). In other words, since the defaulting defendant has not admitted any legal conclusions, the plaintiff must "establish that on the law it is entitled to the relief it seeks, given the facts as established by the default." Finkel v. Triple A Grp., Inc., 708 F.Supp.2d 277, 280 (E.D.N.Y. 2010) (citation omitted); see Lyons P'ship, L.P. v. D & L Amusement & Entm't, 702 F.Supp.2d 104, 111 (E.D.N.Y. 2010). If the

10

elements of the claim are established by the complaint's factual allegations, the defendant's default establishes its liability.   Wowio, 2018 WL 3202077, at *8 (citation omitted).

Nimkoff's pleading contains a cause of action for breach of contract, along with a demand for attorneys' fees and costs.

## 2. Breach of Contract

"A promissory note is a contract and is thus construed according to the general rules of contract interpretation."   Wowio, 2018 WL 3202077, at *8 (citation omitted).[8]   "To state a claim for breach of contract under New York law, 'the complaint must allege: [1] the formation of a contract between the parties; [2] performance by the plaintiff; [3] failure of [the] defendant to perform; and [4] damages.'"   Orlander v. Staples, Inc., 802 F.3d 289, 294 (2d Cir. 2015) (quoting Johnson v. Nextel Commc'ns, Inc., 660 F.3d 131, 142 (2d Cir. 2011)).   To establish a prima facie case of default on a promissory note under New York law, a plaintiff must provide proof of the valid note and of the defendant's failure, despite proper demand, to make payment. See LG Capital Funding, LLC v. Ubiquity, Inc., 16-CV-3102 (LDH) (SMG), 2017 WL 3173016, at *2 (E.D.N.Y. May 12, 2017) (citation and quotation marks omitted), adopted, 2017 WL 3168961 (E.D.N.Y. July 25, 2017).

Here, the well-pled allegations in Nimkoff's Complaint, accepted as true, establish Gottlieb's liability for breach of contract.   First, the parties entered into an enforceable agreement on September 17, 2016, when Gottlieb executed the Second Promissory Note, in which Gottlieb, among other things, acknowledged his indebtedness to Nimkoff arising under the

---

[8]  Accordingly, although Nimkoff's Complaint lists his first cause of action as being "for judgment [] on promissory notes," Compl. ¶¶ 6-15, this Court construes his claim as one for breach of contract.   (What purports to be his second cause of action is his demand for attorneys' fees and costs, which this Court addresses in its discussion of damages.)

First Promissory Note from 2009.   See Compl. ¶ 12; Second Promissory Note.   Second, having

been extended credit by Nimkoff, Gottlieb failed to perform his obligation under that Note: on

August 1, 2016, Nimkoff demanded full payment under the Second Promissory Note, but

Gottlieb failed to repay.   See Compl. ¶¶ 13-14; Email Requesting Payment.   This failure to pay

constituted a default and triggered the default provision contained in the Second Promissory

Note.   See generally id. ¶¶ 14-15; Second Promissory Note.   Nimkoff alleges that as a result of

that breach, he suffered losses reflected in the principal amount due on the Second Promissory

Note, plus contractual interest.   See Compl. ¶ 15.

The Court therefore concludes that Nimkoff has properly alleged a breach of contract

claim based on Gottlieb's failure to repay the principal and interest in response to Nimkoff's

demand for full payment on the Second Promissory Note.

**D.  Damages**

Having found that the Complaint properly alleges Gottlieb's liability for breach of

contract, the Court must now assess the damages to which plaintiff is entitled on his claim.

Even though allegations in a complaint pertaining to liability are deemed admitted upon entry of

a default judgment, allegations relating to damages are not.   See Greyhound Exhibitgroup, 973

F.2d at 158.   Rather, a court must ensure that there is an adequate basis for the damages sought

by a plaintiff before entering judgment in the amount demanded.   See Santillan v. Henao, 822

F.Supp.2d 284, 290 (E.D.N.Y. 2011).   A court may determine the adequacy of the basis for

damages based upon evidence presented at a hearing, but a hearing is not required.   See Fed. R.

Civ. P. 55(b)(2); Action S.A. v. Marc Rich & Co., Inc., 951 F.2d 504, 508 (2d Cir. 1991);

Fustok, 873 F.2d at 40.   No hearing is necessary, for example, where the court is satisfied, based

12

"upon a review of detailed affidavits and documentary evidence," that there is an adequate basis for the damages sought.   Cont'l Cas. Co. v. Contest Promotions NY, LLC, 15-CV-501 (MKB), 2016 WL 1255726, at *6 (E.D.N.Y. Mar. 28, 2016) (citation omitted); see also McLean v. Wayside Outreach Dev. Inc., 624 F.App'x 44, 45 (2d Cir. 2015).   Here, in light of the documentary evidence submitted in support of plaintiff's motion, and because the damage calculations are relatively simple, this Court concludes that no hearing is necessary.

Under New York law, it is well-settled that "[a] party injured by breach of contract is entitled to be placed in the position that it would have occupied had the contract been fulfilled according to its terms."   Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc., 500 F.3d 171, 185 (2d Cir. 2007) (citing Boyce v. Soundview Tech. Grp., Inc., 464 F.3d 376, 384-85 (2d Cir. 2006)).   In this case, the Second Promissory Note provides for repayment of the principal amount of $376,928.65, see Second Promissory Note, plus interest, from August 26, 2015,[9] at the rate of twelve percent (12%) per annum (one percent (1%) per month), compounded monthly, upon plaintiff's demand for such payment, see id.   On August 1, 2016, Nimkoff sent an email to Gottlieb demanding full payment under the Second Promissory Note, but received no payment from Gottlieb.   See Email Requesting Payment; see also Compl. ¶ 13.   Accepting as true Nimkoff's allegation that Gottlieb failed to pay the principal amount upon request on August 1, 2016, Gottlieb thereby defaulted on his obligation to repay the principal amount owed, plus interest at the rate of 12 percent per annum, compounded monthly, beginning on August 26, 2015.

---

[9] Gottlieb acknowledged in the Second Promissory Note that as of August 26, 2015, he was already "justly indebted" to Nimkoff in that sum.   See Second Promissory Note at 1.

In a submission filed "as an officer of the court," see Response to Motion for Default Judgment (Oct. 4, 2019) ("Greenberger Response") at 1, 3, DE #56, Jordan Greenberger, counsel for Drabinsky, articulated a defense to the Promissory Notes that he claimed would apply equally to the two defendants: that the "part of the note(s) that compounds interest before simple interest had accrued is a violation of New York public policy" insofar as "[p]laintiff seeks to recover on the second note with interest compounding from execution (not his demand for payment), and [] the principal amount of the second note is based upon [p]laintiff's calculation of compound interest on the first note," id. at 1-2 (citing Giventer v. Arnow, 37 N.Y.2d 305, 308 (N.Y. 1975)). According to Mr. Greenberger, "[t]he remedy for improper compounding of interest is 'invalidating the compounding clause and limiting the creditor's recovery to principal and simple interest.'" Id. (citing Giventer, 37 N.Y.2d at 308).

Whatever the merit of Mr. Greenberger's argument, it is not one that has been raised by Gottlieb, who failed to answer or otherwise appear in this action.[10]   Having thus defaulted, Gottlieb has waived such a defense.   See generally Merchant Cash & Capital LLC v. Edgewood Grp., LLC, No. 14cv03497 (JGK)(DF), 2015 WL 4430643, at *4 n.5 (S.D.N.Y. July 2, 2015) ("[U]sury is an affirmative defense that may be waived upon default") (citing Carlone v. Lion & The Bull Films, Inc., 861 F.Supp.2d 312, 319 (S.D.N.Y. 2012)).

---

[10] Nimkoff counters that the holding in Giventer has been superseded by section 5-527 of New York's General Obligations Law, titled "Enforceability of compound interest."   See Plaintiff's Reply Memorandum of Law in Further Support of His Motion for a Default Judgment Against Defendant Myron I. Gottlieb (Oct. 4, 2019) at 2-3, DE #57-10; see also Themis Capital, LLC v. Dem. Rep. Congo, 626 F.App'x 346, 348 (2d Cir. 2015) (agreeing with the district court's "conclusions that plaintiffs are entitled to 'compound' interest on the interest that accrued on the unpaid principal").   The Court need not, however, resolve this dispute between Nimkoff and Drabinsky, in the context of a motion for default judgment against Gottlieb.

Accordingly, the Court respectfully recommends that Nimkoff be awarded $376,928.65 in unpaid principal with interest on that principal to be calculated at twelve percent per annum compounded monthly from August 26, 2015 until the final entry of judgment.

## E. Attorneys' Fees

### 1. Nimkoff's Entitlement to a Fee Award

Nimkoff also seeks attorneys' fees in the amount of $61,568.00.   See Nimkoff Aff. ¶ 8; Ex. F to Motion for Default Judgment (Itemized Time Records and Costs) (Oct. 4, 2019) ("Itemized Time Records and Costs"), DE #55-7.   "[T]he general rule in New York" is that "attorneys' fees are the ordinary incidents of litigation and may not be awarded to the prevailing party unless authorized by agreement between the parties, statute, or court rule."   Oscar Gruss & Son, Inc. v. Hollander, 337 F.3d 186, 199 (2d Cir. 2003) (citations omitted).   Accordingly, "[t]here is no question that, absent a contractual provision for fees, a prevailing plaintiff cannot recover those expenses on a contract-breach claim."   Quanzhou Joerga Fashion Co., Ltd. v. Brooks Fitch Apparel Grp., LLC, No. 10 Civ. 9078(VM)(MHD), 2011 WL 4063344, at *8 (S.D.N.Y. Aug. 11, 2011) (citations omitted).   Subject to several qualifications discussed below, "[u]nder New York law, a contract that provides for an award of reasonable attorneys' fees to the prevailing party in an action to enforce the contract is enforceable if the contractual language is sufficiently clear."   NetJets Aviation, Inc. v. LHC Commc'ns, LLC, 537 F.3d 168, 175 (2d Cir. 2008) (citing cases); see also Mt. Vernon City Sch. Dist. v. Nova Cas. Co., 19 N.Y.3d 28, 39 (2012) ("[T]he court should not infer a party's intention to waive the benefit of the [general] rule [that parties pay their own legal fees] unless the intention to do so is *unmistakably clear* from the language of the promise." (citations omitted and emphasis in original)).

Here, Nimkoff argues that he is "entitled to judgment against Gottlieb for his . . . attorneys' fees, incurred in connection with this action, including a sum representing the value of his own legal services rendered to effect collection under the [Second] Promissory Note that Gottlieb executed in his favor."  Pl. Mem. at 6.   The Second Promissory Note provides that the "[o]bligors, in the event of default, authorize any holder [] to proceed immediately against the [o]bligors, jointly and severally . . . , for the holder's costs and attorneys' fees."   Second Promissory Note at 1.   That Note further states that "[i]n the event that the [o]bligee is the holder of this promissory note, the value of the legal services provided by the [o]bligee . . . to effect collection under this promissory note may, at the [o]bligee's option, be the attorneys' fees for which [o]bligors shall be responsible."  Id.

Accordingly, the Second Promissory Note does provide for the payment by the obligor (here, Gottlieb) of the holder's (Nimkoff's) fees and costs in the event of a default.   That does not, however, end the Court's inquiry.   First, although the contractual provision does not by its terms incorporate any limitation, the law is clear that "[i]n awarding attorneys' fees pursuant to a contract, a court must order the losing party to pay the amount actually incurred by the prevailing party, 'so long as those amounts are not unreasonable.'"   Cty. of Oswego Indus. Dev. Agency v. Fulton Cogeneration Assocs. L.P., 636 F.Supp.2d 159, 179 (N.D.N.Y. 2009) (quoting F.H. Krear & Co. v. Nineteen Named Trs., 810 F.2d 1250, 1263 (2d Cir. 1987)).   As discussed hereinafter, in connection with the Court's calculation of the appropriate amount of fees to be awarded against Gottlieb, the sum sought by Nimkoff is unreasonable in several respects.

Second, Nimkoff has not responded to the argument advanced by counsel for Drabinsky, Gottlieb's co-defendant, that Nimkoff is not entitled to fees "because he is an attorney litigating

16

his case pro se." Greenberger Response at 2 (collecting cases); see, e.g., Gray v. Proteus Sports & Racing Cars Ltd., No. 13 Cv. 8717(JGK), 2014 WL 7330859, at *9 n.9 (S.D.N.Y. Dec. 23, 2014) ("[E]ven if there had been a provision in the contract for attorneys' fees, plaintiff [an attorney] is proceeding *pro se* and therefore would presumptively not be entitled to them.") (citing Hammer v. RDR Books, No. 10 Civ. 1007(CM), 2011 WL 4388849, at *7 & n.4 (S.D.N.Y. Sept. 20, 2011) (holding that, despite contractual fee provision, *pro se* attorney awarded summary judgment for breach of contract "cannot be reimbursed for work done on his own behalf"); and U.S. Dep't of Justice, Tax Div. v. Hudson, 626 F.3d 36, 39 (2d Cir. 2010)).

The Court need not reach the merits of Drabinsky's objection to Nimkoff's application for a fee award. Unlike Drabinsky, who, in answering the Complaint, has interposed an affirmative defense that "[t]he attorney's fee provision of the subject note is void and unenforceable" and that Nimkoff "may not recover attorneys' fees for his pro se representation of himself," Drabinsky Ans. ¶ 24, Gottlieb has instead defaulted and has asserted no defenses. As a result, Gottlieb has waived any such objection to the fee award. See generally *supra* p. 14.

## 2. Calculating the Fee Award

To determine the fees due to Nimkoff, the Court must ascertain the "presumptively reasonable fee" for the legal services rendered in this matter; that is, "what a reasonable client would be willing to pay[.]" Masino v. Columbus Constr. Corp., No. 08-CV-1592 (RRM)(CLP), 2009 WL 2566956, at *6 (E.D.N.Y. Aug. 19, 2009) (quoting Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d 182, 183-84 (2d Cir. 2008)). In calculating the presumptively reasonable fee, the Court must first determine a reasonable hourly rate for the legal services performed, using factors such as the labor and skill required, the difficulty of the

legal questions, the attorney's customary rate, the amount at stake, and awards in similar cases.

See id. at *6-7 (quoting Arbor Hill, 522 F.3d at 187 n.3).   Under the so-called "forum rule," the

Court should also consider the rates generally charged in the District in which it sits.   See

Simmons v. N.Y.C. Transit Auth., 575 F.3d 170, 174-76 (2d Cir. 2009).   To arrive at the

presumptively reasonable fee, once the Court determines the reasonable hourly rate, it multiplies

that rate by the reasonable number of hours expended.   See Masino, 2009 WL 2566956, at *7-8.

   a.   *Hourly Rates*

   Nimkoff seeks attorneys' fees calculated at an hourly rate of $520.00.   See Nimkoff Aff.

¶ 8; Itemized Time Records and Costs.   To determine a reasonable hourly rate, a court must take

into account all of the case-specific variables.   See Arbor Hill, 522 F.3d at 189-90.   Here,

Nimkoff's affidavit in support of his fee application avers that Nimkoff has been practicing law

for more than thirty-five years, during which he gained "sophisticated, commercial litigation

experience."   See Nimkoff Aff. ¶ 8.   Nimkoff also recounts his litigation experience from 1983

to present, which includes work as an associate, senior associate, and partner at multiple firms,

including at the Nimkoff Firm of which Nimkoff was a name partner.   See id. ¶ 9.   In regards to

his hourly fee, Nimkoff states that $520.00 per hour is his "usual billing rate" and is "certainty

reasonable" in light of his experience.   See id.[11]

   While this Court recognizes Nimkoff's experience as a commercial litigator, Nimkoff

does not provide this Court with sufficient information to support an hourly rate of $520.00.   As

an initial matter, even assuming *arguendo* that Nimkoff could be said to have a concentration in

---

[11] Nimkoff also provides a list of corporate clients for which he has performed legal services, although he neither elaborates on the type of work he performed for these clients nor states when his representation commenced and/or concluded.   See Nimkoff Aff. ¶ 10.

the type of litigation at issue in this case, i.e., an action to collect on a promissory note, the claim against Gottlieb was neither legally complex nor especially hard fought, as Gottlieb, the defaulting defendant, never appeared to defend himself.   In addition, because Nimkoff's office is located in the Eastern District of New York, this Court must consider the prevailing rates for attorneys in this District.   See Simmons, 575 F.3d at 175-76 (noting that Eastern District courts must consider the rates of attorneys in that district, absent limited exceptions not present in the instant suit).   Nimkoff has not provided evidence that an hourly rate of $520.00 is in line with those rates prevailing in the community for similar services, in similar collection cases, by lawyers of reasonably comparable skill, experience, and reputation.

Given the specific circumstances of this case and the limited evidence proffered by Nimkoff in support of his fee application, the Court concludes that $300 is a reasonable hourly rate for the work performed pursuant to the claim against Gottlieb.   See LG Funding, LLC v. Fla. Tilt, Inc., No. 15-CV-631 (PKC)(VMS), 2015 WL 5038195, at *3-4 (E.D.N.Y. Aug. 26, 2015) (Chen, J.) (on a motion for default judgment for collection on a debt, court surveys cases in this District and concludes that experienced attorneys with upwards of ten years' experience have been approved for rates of $300 per hour and above); see also Friedman v. Sharinn & Lipshie, P.C., No. 12 CV 3452(FB)(CLP), 2013 WL 1873302, at *10 (E.D.N.Y. Mar. 28, 2013) (adjusting the hourly rate downward to $275 per hour for a named partner who practiced for over 30 years, noting that the requested $400 rate was "somewhat inflated" for a "relatively straightforward" default judgment, given the less intensive work required), adopted, 2013 WL 1869924 (E.D.N.Y. May 3, 2013).

b.  *Hours Worked*

"[A]ttorneys' fees must be 'documented by contemporaneously created time records that specify, for each attorney, the date, the hours expended, and the nature of the work done.'" Fulton Cogeneration, 636 F.Supp.2d at 179 (quoting Kirsch v. Fleet St., Ltd., 148 F.3d 149, 172 (2d Cir. 1998)).  As part of Nimkoff's application, he has submitted a summary of the legal work that he performed while prosecuting this case, billed in six-minute increments.  See Itemized Time Records and Costs.  These records show that Nimkoff expended 122.20 hours between July 26, 2017 and August 17, 2019.[12]  For the reasons that follow, the Court deems it appropriate to reduce the number of hours for which Gottlieb should be required to compensate him.

As an initial matter, the Court's assessment of the time charges in this case was impeded by Nimkoff's use of "block-billing," wherein Nimkoff aggregated multiple tasks into a single billing entry.  See Itemized Time Records and Cost.  For example, Nimkoff's time entry for July 19, 2019 shows that he recorded 5.1 hours of work for (i) "preparation of plaintiff's response to Garth Drabinsky's discovery requests and review of documents and legal research in connection with same;" and (ii) "review and analysis of Drabinsky's efiling relating to Hague Convention service on Gottlieb[.]"  Itemized Time Records and Costs at ECF p. 6.  Similarly, Nimkoff's entry for August 17, 2019 reflects 4.10 hours spent on a variety of tasks, including (i) "preparation of correspondence to Jordan Greenberger regarding discovery and steps to take and legal research in connection with same;" and (ii) "preparation of notice of motion for default

---

[12] Nimkoff's itemized time records show he worked additional hours during this time period; however, the records reflect a number of charges designated as "NO CHARGE," which were not billed by Nimkoff. See generally Itemized Time Records and Costs.

against Gottlieb and supporting affidavit with exhibits and supporting memorandum of law and legal research in connection with same . . . ." Id. at ECF pp. 7-8. Moreover, a few of the block-billed entries include time spent electronically filing Nimkoff's submissions. See, e.g., id. at 2, 7 (7/28/2017, 10/26/2017, 8/9/2019). Even assuming that Nimkoff is a solo practitioner,[13] "these administrative tasks are part of a firm's overhead and should not be separately charged to clients and certainly not at the attorney's hourly rate." Frederic v. Commonwealth Fin. Sys. Inc., Case No. 15-cv-0381 (PKC), 2016 WL 1383488, at *4 (E.D.N.Y. Apr. 7, 2016) (Chen, J.) (collecting cases); accord Cocuzza v. Rockland Cty., N.Y., 17 Civ. 8217 (KMK) (PED), 2019 WL 6498915, at *6-7 (S.D.N.Y. Nov. 7, 2019), adopted, 2019 WL 6498092 (S.D.N.Y. Dec. 2, 2019).

Block-billing of the kind reflected in Nimkoff's time records makes it difficult for the Court to assess the reasonableness of the time spent on each task. See, e.g., Triumph Constr. Corp. v. N.Y.C. Council of Carpenters Pension Fund, No. 12 Civ. 8297(KPF), 2014 WL 6879851, at *6 (S.D.N.Y. Dec. 8, 2014). Although "not per se unreasonable, block billing is generally disfavored because it can have a tendency to obfuscate the amount of time expended on distinct tasks and introduce an element of vagueness into a fee application, making it difficult to determine if the reported hours are duplicative or unnecessary." N.Y. Ass'n for Retarded Children v. Cuomo, 72 CV 356 (RJD), 2019 WL 3288898, at *6 (E.D.N.Y. July 22, 2019) (citation and internal quotation marks omitted). To address the problem of block-billing, courts may reduce the number of hours in a fee application, and "[w]hen billing records reveal repeated use of block billing, courts have used percentage reductions as a practical means of trimming fat

---

[13] All of the time entries reflect work performed by Nimkoff ("RAN") alone.

from a fee application." <u>Nicaisse v. Stephens & Michaels Assocs., Inc.</u>, CV 14-1570 (JS)(GRB), 2016 WL 4367222, at *8 (E.D.N.Y. June 9, 2016) (citations and internal quotation marks omitted), <u>adopted</u>, 2016 WL 4275687 (E.D.N.Y. Aug. 12, 2016).

Nimkoff's demand for $61,568.00 in fees from Gottlieb, for work performed over the course of more than a two-year period spanning from July 26, 2017 through August 17, 2019, suffers from an even more pervasive problem: to wit, Nimkoff – who never even served his summons and Complaint on Gottlieb – seeks fees for a substantial amount of work performed in litigating his claims against Drabinsky, the defendant who appeared in the action and eventually served Gottlieb with his and Nimkoff's pleadings on May 8, 2019.   Nimkoff simply assumes, without discussion, that Gottlieb is responsible for every single "time charge" through August 19, 2019, the point at which Nimkoff served Gottlieb with his motion for default judgment.   <u>See</u> Letter to Judge Chen (August 19, 2019), DE #46.   Contrary to Nimkoff's assumption, it is common practice for courts in this Circuit to reduce or exclude "attorneys' hours that were expended on matters related to non-defaulting defendants, [as] defaulting defendants are not responsible for attorneys' fees related to other, non-defaulting defendants[.]"   <u>Xochimitl v. Pita Grill of Hell's Kitchen, Inc.</u>, 14-CV-10234 (JGK) (JLC), 2016 WL 4704917, at *21 (S.D.N.Y. Sept. 8, 2016) (citing cases), <u>adopted</u>, 2016 WL 6879258 (S.D.N.Y. Nov. 21, 2016).

To be sure, the fee provision in the Second Promissory Note authorizes the holder to proceed against the "[o]bligors, jointly and severally[.]"   Second Promissory Note. Nevertheless, as Nimkoff was quick to point out in resisting deferral of his default judgment motion until after resolution of the claim against Drabinsky, joint liability and several (or independent) liability are distinct concepts.   <u>See</u> Motion for Reconsideration at 2-4.   Thus,

22

while Nimkoff may *seek* to hold the two defendants jointly responsible for all time entries through August 19, 2019, the Court is empowered to determine whether several liability is more appropriate under the circumstances.

"The allocation of fee liability is a matter committed to the district court's discretion[.]" Koster v. Perales, 903 F.2d 131, 139 (2d Cir. 1990), partially abrogated on other grounds by Buckhannon Bd. & Care Home, Inc. v. W.Va. Dep't of Health & Human Res., 532 U.S. 598 (2001); accord *In re* Arbitration Between Finkel & Potenza Elec. Corp., 19 cv 486 (AMD)(RML), 2019 WL 7580103, at *5 (E.D.N.Y. Nov. 26, 2019), adopted sub nom. Finkel v. Potenza Elec. Corp., 2020 WL 207707 (E.D.N.Y. Jan. 14, 2020); Lu Nan Fan v. Jenny & Richard's Inc., 17-CV-6963 (WFK), 2019 WL 1549033, at *15 (E.D.N.Y. Feb. 22, 2019), adopted, 2019 WL 1547256 (E.D.N.Y. Apr. 9, 2019).   Among the various factors that a court may consider in determining how and whether to apportion fees is "the proportion of time spent litigating against each defendant."   Lu Nan Fan, 2019 WL 1549033, at *15 (quoting Koster, 903 F.2d at 139).   In allocating fee awards, courts "should make every effort to achieve the most fair and sensible solution that is possible."   Koster, 903 F.2d at 139 (citation and internal quotation marks omitted); accord *In re* Finkel & Potenza, 2019 WL 7580103, at *5 (citation omitted).

The determination of whether to impose joint and several fee liability must therefore be made on a case-by-case basis.   Where two or more parties are found jointly and severally liable on an underlying claim, and the vast majority of legal work performed by counsel for the prevailing party involved litigation aimed at all adverse parties, a court in exercising its discretion may, but need not, impose joint and several liability.   Compare Rai v. WB Imico Lexington Fee, LLC, 09 Civ. 9586 (PGG), 2017 WL 1215004, at *7-8 (S.D.N.Y. Mar. 31, 2017)

(breach of contract case in which court concluded that plaintiffs should be held jointly and severally liable for fees), with Joint Venture Asset Acquisition v. Bhogaonker, No. 87 Civ. 5308(RWS), 1991 WL 254556, at *5 (S.D.N.Y. Nov. 19, 1991) (in action on promissory notes, court allocated responsibility for fees in accordance with relative fault of each defendant, finding that joint and several liability would be "unfair").

Here, Nimkoff seeks a fee award for work performed over the course of more than two years, most of that time predating Drabinsky's service of plaintiff's summons and Complaint on Gottlieb on May 8, 2019. As reflected in Nimkoff's time sheets, nearly all of the entries for which Nimkoff seeks fees involve time spent litigating against Drabinsky, the non-defaulting defendant. In light of the substantial imbalance in the hours expended by Nimkoff in prosecuting his claims against the two defendants, this Court, in its discretion, finds that it would be unfair to apply joint and several liability with respect to his attorneys' fees. See, e.g., Thompson v. Dep't of Housing & Urban Dev., No. Civ.A MGJ-95-309, 2002 WL 31777631, at *14-15 (D. Md. Nov. 21, 2002 (citing, inter alia, Vulcan Soc'y Westchester Cty., Inc. v. Fire Dep't of City of White Plains, 533 F.Supp. 1054, 1064 (S.D.N.Y. 1982)). Instead, Nimkoff's fee award should be fashioned to compensate him for the time spent pursuing his claims against Gottlieb, the defaulting defendant. See, e.g., Xochimitl, 2016 WL 4704917, at *21 (collecting cases); Lucerne Textiles, Inc. v. H.C.T. Textiles Co., Ltd., No. 12 Civ. 5456(KMW)(AJP), 2013 WL 174226, at *9 (S.D.N.Y. Jan 17, 2013) (defaulting defendant "is not responsible for fees related to [plaintiff's] claims against other parties"), adopted, 2013 WL 1234911 (S.D.N.Y. Mar. 26, 2013); Colon v. City of N.Y., No. 09 CV 0008(JBW), 2012 WL 691544, at *22 (E.D.N.Y.

Feb. 9, 2012) (excluding time charges "for tasks that appear to have no relation to their case against these defaulting defendants"), adopted, 2012 WL 686878 (E.D.N.Y. Mar. 2, 2012).

Moreover, all of the time entries that appear to relate to Nimkoff's claim against Gottlieb are in "block" form and include work that Nimkoff completed in support of his claim against Drabinsky. Although the District Court could, if it chose to, decline to award Nimkoff fees for entries that commingle distinct activities aimed at the appearing and defaulting parties, see, e.g., Bumble & Bumble, LCC v. Pro's Choice Beauty Care, Inc., 14-CV-6911 (VEC)(JLC), 2016 WL 658310, at *10 (S.D.N.Y. Feb. 17, 2016), adopted, 2016 WL 1717215 (S.D.N.Y. Apr. 27, 2016), this Court does not recommend that approach here, which would result in an even more modest fee award against Gottlieb. Instead, given the relatively limited number of time entries relating to Gottlieb, the Court recommends a percentage reduction for each such entry, as set forth in the following chart[14]:

---

[14] Rather than uniformly reducing Nimkoff's fees by a set percentage, the Court reduces each entry by a percentage corresponding to the approximate amount of work the Court, in its discretion, finds Nimkoff should have expended in prosecuting his claims against Gottlieb. See, e.g., Van Loo v. Cajun Operating Co., Case No. 14-cv-10604, 2016 WL 6211692, at *4 (E.D. Mich. Oct. 25, 2016); Thompson, 2002 WL 31777631, at *15-16. Where the work performed related to both defendants equally, such as drafting the Complaint, the Court attributes 50 percent of that time to the claim against Drabinsky. See Van Loo, 2016 WL 6211692, at *4; Thompson, 2002 WL 31777631, at *15.

25

| Date of Entry | Hours Billed by Nimkoff | Recommended Hourly Reduction (%) | Recommended Number of Recoverable Hours |
|---|---|---|---|
| 7/26/2017 | 7.40 | 50% | 3.70 |
| 7/27/2017 | 3.20 | 50% | 1.60 |
| 7/28/2017 | 2.80 | 50% | 1.40 |
| 8/1/2017 | 0.40 | 50% | 0.20 |
| 8/24/2017 | 0.10 | 50% | 0.05 |
| 10/26/2017 | 0.80 | 50% | 0.40 |
| 10/29/2017 | 0.10 | 50% | 0.05 |
| 1/25/2018 | 0.60 | 50% | 0.30 |
| 5/31/2019 | 0.10 | 0% | 0.10 |
| 6/19/2019 | 5.10 | 90% | 0.51 |
| 8/16/2019 | 6.80 | 10% | 6.12 |
| 8/17/2019 | 4.10 | 25% | 3.08 |
| | | | **17.51 hours** |

Multiplying the reduced hourly rate ($300.00) by the reduced number of hours for work relating to Nimkoff's claim against Gottlieb (17.51 hours), the Court recommends awarding Nimkoff $5,253.00 in attorneys' fees.

**F.  Costs**

Nimkoff also seeks costs totaling $7,767.71, consisting of: (i) $400.00 for the filing fee for the summons and Complaint; (ii) $900.00 for service-related costs; (ii) $6,318.17 in costs associated with local Canadian counsel; (iv) $15.27 in postage; (v) $104.52 in transcript costs; and $29.75 in transportation expenses.   See Itemized Time Record and Costs at ECF p. 8.   All

26

but the transcript costs were incurred before Gottlieb was served with the summons and

Complaint, and Nimkoff does not explain which, if any, of these costs were incurred as part of

his efforts to prosecute his claim and secure judgment against Gottlieb.  See id.[15]  Additionally,

a fee applicant bears the burden of adequately documenting and itemizing the costs requested,

and without documentary proof of the costs sought, a party is not entitled to recover such

expenditures.  See Nicaisse, 2016 WL 4367222, at *9 (citations and quotation marks omitted).

Nimkoff offers no evidence to substantiate any of these costs.   Although the Court takes judicial

notice of the $400.00 filing fee reflected on the docket report, see, e.g., Douyon v. NY Medical

Health Care, P.C., 49 F.Supp.3d 329, 352 (E.D.N.Y. 2014), the Court declines to recommend an

award of costs for any of the additional expenditures listed in Nimkoff's cost breakdown.

    As such, this Court that recommends Nimkoff be awarded $200.00 in costs, or one half of

the filing fee in this suit.   Cf. Loring v. Kwal-Howels, Inc., No. 12-2378-JAR, 2013 WL

6632068, at *6 (D. Kan. Dec. 17, 2013) (splitting the filing fee between two defendants").

## G.  Pre-Judgment Interest

    Finally, this Court recommends that Nimkoff not be awarded statutory pre-judgment

interest.   On June 3, 2020, this Court issued an order directing Nimkoff to show why he was not

precluded from recovering pre-judgment interest in light of the fact that plaintiff's Complaint

"does not seek statutory pre-judgment interest" while his Proposed Order seeks pre-judgment

"interest at the statutory rate of 9%."   Order to Show Cause (June 3, 2020) at 1-2, DE # 97

(citations omitted).   As this Court noted in its order, the Second Circuit has long held that a

---

[15]  The Court has reason to believe that almost all of these costs relate to Nimkoff's claims against
Drabinsky.   By way of example, the $900.00 service costs are from October 5, 2017, which corresponds
to when Nimkoff effected service on Drabinsky.   See Itemized Time Records and Costs at ECF p. 8.

default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings.  See id. (citing Silge v. Merz, 510 F.3d 157, 160-61 (2d Cir. 2007)).  Plaintiff responded on June 6, 2020, stating that his Proposed Order "misguidedly created confusion" and clarifying "that the *only* pre-judgment interest that [he sought] from defendant Gottlieb . . . is that [contractual] interest that is expressly stated in the promissory note sued upon and expressly referenced in the [C]omplaint in this action."  Response to Order to Show Cause (June 6, 2020), DE #98 (emphasis in original).   In light of the foregoing explanation, and because this Court has already recommended that plaintiff be awarded contractual interest at the rate set forth in the Second Promissory Note, see *supra* pp. 12-15, Nimkoff should not be awarded statutory pre-judgment interest as part of his award.

## CONCLUSION

For the foregoing reasons, the Court recommends that Nimkoff's motion for default judgment against Gottlieb be granted in substantial part, and that plaintiff be awarded (1) $376,928.65 in unpaid principal; (2) interest on the unpaid principal calculated at twelve percent per annum compounded monthly from August 26, 2015 until entry of judgment; (3) attorneys' fees totaling $5,253.00; and (4) costs amounting to $200.00.

Any objections to the recommendations contained herein must be filed with Judge Pamela K. Chen on or before **June 26, 2020**.   Failure to file objections in a timely manner may waive a right to appeal the District Court order.   See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989) (per curiam).

Nimkoff is directed to promptly serve a copy of this Report and Recommendation on Gottlieb, via overnight Federal Express, at the address where he was served with the summons

and Complaint, and shall file proof of service:

Myron Gottlieb
3471 Ravenscliffe Rd.
Huntsville, Ontario P1H 2J2

**SO ORDERED.**

**Dated:     Brooklyn, New York**
**June 9, 2020**

/s/ *Roanne L. Mann*

**ROANNE L. MANN**
**UNITED STATES MAGISTRATE JUDGE**